IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. ISAACSON


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

CHRISTINA M. ISAACSON, APPELLANT.


Filed November 14, 2023.    No. A-23-082.


Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Kyle J. Flentje, of Flentje Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.


RIEDMANN, BISHOP, and WELCH, Judges.

RIEDMANN, Judge.

### INTRODUCTION

Christina M. Isaacson appeals her conviction from the Lancaster County District Court for two counts of possession of a controlled substance. Isaacson claims the search warrant executed on her property violated her constitutional rights because the affidavit upon which it was issued did not state sufficient probable cause. Because we find there was sufficient probable cause stated in the affidavit for issuance of the search warrant, we affirm.

### BACKGROUND

In January 2021, the Lancaster County Sheriff's Office began investigating a series of burglaries in which antique coins, antique firearms, and jewelry were stolen. Deputies alerted nearby stores to be on the lookout for the stolen items and to call the police to report any attempted sales. A coin and bullion store notified police that on February 22, Brandon Barker attempted to

- 1 -

sell some of the stolen coins. The victim later identified some of the stolen antique coins that Barker attempted to sell.

On March 1, 2021, a confidential informant (CI) came forward with information about stolen coins from "a dead man's house" in Denton, Nebraska. The CI reported that Barker and another man, Nickolus Stinson, had been in possession of the stolen property from Denton. The CI recalled that Barker and Stinson were living with Isaacson, but Isaacson "kicked" them out. Thereafter, the CI let the two men stay at their residence. Stinson and Barker gave some of the stolen coins to the CI, which the CI turned over to deputies.

The CI told investigators that they saw marijuana, coins, and guns in the men's possession while they stayed with the CI. The CI also reported that Barker had tried to sell 70 pounds of coins, and the CI had taken photos of the stolen items. Stinson told the CI that he received $1,000 from selling jewelry and coins to pawn shops. Investigators were able to find a receipt from a pawn shop for $1,041 to Stinson and identified another pawn shop where Stinson sold one of the victim's rings with a "starburst" design.

On March 3, 2021, the CI was interviewed by investigators again. The CI reported that Isaacson rents out portions of her home for people to stay or store property in return for money or drugs. The CI claimed that when Barker and Stinson stayed with Isaacson, the two men had paid Isaacson with stolen coins. Isaacson had "kicked" them out because the two men refused her demand for more payment.

The CI had also been in Isaacson's home, in which they saw some of the stolen coins in her possession. While in Isaacson's home, the CI also witnessed two drug transactions of methamphetamine for money. They reported they saw duffle bags in Isaacson's shed that Stinson used to carry the stolen coins and jewelry. A search warrant for a co-conspirator's phone in a January 2021 burglary revealed communications with Barker, where Barker told him that he got rid of things that would incriminate them and put them in jail. Investigators then sought a search warrant for Isaacson's place, in which they sought the following items: "firearms to include a .22 caliber revolver . . . , men's gold class of 1957 Milford High School bracelet, antique coins, antique jewelry, silver bars, a 42 inch flat screen TV, a pump action shotgun, illicit drugs, illicit drug paraphernalia, and tools."

Deputies executed a search warrant on Isaacson's property on March 5, 2021. Deputies knocked on the back door to the residence, and after several announcements, Isaacson answered the door and was placed in custody. After deputies searched the residence, methamphetamine and hydrocodone were found in a bedroom that Isaacson identified as her bedroom. The hydrocodone was in a prescription pill bottle that had a name on it different than Isaacson.

Isaacson was ultimately charged with two counts of possession of a controlled substance; one count for the methamphetamine and one count for the hydrocodone found in her room.

On April 11, 2022, Issacson filed a motion to suppress. She argued that the search warrant for her property was not based upon sufficient probable cause, it authorized a general search, and the search exceeded the authority granted in the search warrant. She also claimed that the affidavit in support of the search warrant did not set forth sufficient probable cause to believe that specific items related to a criminal offense were in Isaacson's residence.

At the motion to suppress hearing, Investigator Nick Heitman testified regarding his involvement with investigating the burglaries, working with the CI, and locating the items at

Isaacson's residence during the execution of the search warrant. Heitman corrected the address listed in the affidavit from which the items were stolen.

Heitman testified that the CI became a CI on March 3, 2021. The CI also requested payment for their information, and was paid $300, which is more than usual for the Lancaster County Sheriff's Office. Heitman clarified that the photos taken of the stolen coins and guns were originally taken in the CI's residence, but the photos were of stolen items identified by the victims. After Heitman's testimony, the district court took the matter under advisement.

The district court overruled Isaacson's motion to suppress in a written order. The district court found sufficient probable cause to support the search warrant. It relied on the affidavit's "significant investigation conducted by law enforcement into the previously mentioned burglaries as well as information gathered regarding disposition or attempted disposition of a number of the unique items stolen." It also found that Isaacson's argument about material omissions was insufficient because she failed to make a preliminary showing of any intentionally false or misleading statements in the affidavit. The district court concluded that even if there was not adequate probable cause, the court would find the good-faith exception applied to prevent suppression of the evidence seized.

After the district court overruled Isaacson's motion to suppress, a status hearing was held on September 21, 2022. Isaacson's counsel informed the district court that she intended to appeal the order overruling the motion to suppress. To effectuate the appeal, Isaacson wished to waive "speedy and jury trial," then set the matter for a stipulated bench trial. The district court explained to Isaacson what a stipulated trial meant, as well as her constitutional rights and how they were impacted by her waiving her rights. Ultimately, the district court accepted Isaacson's waiver.

The stipulated trial was held, and the district court found Isaacson guilty on both counts. It later sentenced Isaacson to 2 years of probation for each count, with each count to run concurrently. Isaacson appeals.

## ASSIGNMENTS OF ERROR

Isaacson assigns that her Fourth Amendment rights were violated when her home was searched because (1) the CI was not reliable; (2) the affidavit upon which the search warrant was issued did not establish probable cause; and (3) the affidavit upon which the search warrant was issued contained material omissions.

## STANDARD OF REVIEW

After-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. Instead, a judge's determination of probable cause to issue a search warrant should be paid great deference by reviewing courts. *State v. Short*, 310 Neb. 81, 964 N.W.2d 272 (2021).

In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *Id.* Regarding historical facts, we review the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *Id.*

ANALYSIS

The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things seized." The Nebraska Constitution provides similar protection. *State v. Hidalgo*, 296 Neb. 912, 896 N.W.2d 148 (2017).

Isaacson challenges the constitutionality of the search warrant and claims it violated her Fourth Amendment rights. There are three components to her challenge. Isaacson claims that the search warrant was unconstitutional because (1) the CI was not reliable; (2) the affidavit upon which the search warrant was issued lacked probable cause; and (3) the affidavit upon which the search warrant was issued contained material omissions.

*CI was Reliable.*

Issacson claims the reliability of the CI was never established. She argues that the CI's statements were not against their penal interest, because the affidavit did not contain any statements in which the CI acknowledged their involvement. Without corroboration or independent investigation completed by deputies, Isaacson concludes that the information provided by the CI was not reliable enough to support a finding of probable cause.

In reviewing the strength of an affidavit as a basis for finding probable cause to issue a search warrant, we have adopted the "totality of the circumstances" rule established by the U.S. Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). *State v. Ildefonso*, 262 Neb. 672, 634 N.W.2d 252 (2001). In determining the sufficiency of an affidavit to show probable cause for the issuance of a search warrant, an appellate court looks to all the circumstances. *State v. Swift*, 251 Neb. 204, 556 N.W.2d 243 (1996). This means that if the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, indicate there is a fair probability that evidence of a crime may be found at the place described, the affidavit is sufficient. *Id*.

When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. *State v. Hidalgo, supra*. These two prongs are not accorded independent status, but, rather, are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. *Id*.

Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain the search warrant that: (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement against their penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or reliability of the information the informant has given. *Id*.

- 4 -

Here, the CI's statements to police are reliable and set forth facts demonstrating the basis of the CI's knowledge of criminal activity. The CI provided police with stolen coins they received from Barker and Stinson. They informed officers of both Barker's and Stinson's attempts to sell the stolen coins and jewelry, which police were able to corroborate.

As to the CI's reliability, there is nothing in the record to indicate the CI had given reliable information to police in the past and the CI was paid for their information so they were not a citizen informant. However, the CI made a statement against their penal interest when they told police that they housed both Barker and Stinson after Isaacson kicked them out, which even Isaacson acknowledges subjected the CI to criminal liability for "harboring fugitives they knew to be committing crimes." Brief for appellant at 11.

In *State v. Ildefonso, supra*, the Nebraska Supreme Court held that an informant's statement against her own penal interest was sufficient to support a finding of probable cause. There was no suggestion in the affidavit that the informant had given reliable information to the police before or that the police independently investigated the informant's reliability or the reliability of the information she had given. *Id*. The informant told police that she had deposited a bookbag, which contained handguns and drugs, at her former residence before driving the defendant to the hospital after he was shot. *Id*. Because a statement against penal interest carries a sufficient indicia of reliability to support a finding of probable cause, the court did not need to determine whether the informant was a citizen informant. *Id*.

Akin to *State v. Ildefonso*, 262 Neb. 672, 634 N.W.2d 252 (2001), the CI in the present action made a statement against their penal interest, which carries a sufficient indicia of reliability to support a finding of probable cause. In addition, much of the information provided by the CI to law enforcement was corroborated by officers in their investigation, including attempted sales of the stolen items. Furthermore, the CI provided photographs of some of the items that had been stolen as well as some stolen coins the CI had received, all of which supported information law enforcement had discovered during their investigation.

In addition to the CI's statement against penal interest, law enforcement's independent investigation establishes the CI's reliability or reliability of the information the CI has given. Therefore, the affidavit sufficiently (1) set forth facts demonstrating the basis of the CI's knowledge of criminal activity and (2) the CI's credibility was established.

*Affidavit Established Probable Cause.*

Isaacson claims the affidavit in support of the search warrant lacked probable cause. She argues that the pictures referenced in the affidavit were taken in the CI's residence and there was no claim in the affidavit that the CI had witnessed anything in Isaacson's house except for two drug transactions, which were lacking in detail. She asserts there was no independent investigation completed by deputies to corroborate the CI's statements. Isaacson concludes that the "only evidence applied in the Affidavit against [her] was hearsay statements from an uncredible CI." Brief for appellant at 10.

The execution of a search warrant without probable cause is unreasonable and violates constitutional guarantees. *State v. Hidalgo*, 296 Neb. 912, 896 N.W.2d 148 (2017). Accordingly, a search warrant, to be valid, must be supported by an affidavit which establishes probable cause. *Id*. Probable cause sufficient to justify issuance of a search warrant means a fair probability that

contraband or evidence of a crime will be found. *Id.* The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *Id*.

Isaacson's argument challenges many of the CI's statements because they were not individually corroborated or specific. For instance, Isaacson argues that there was not sufficient probable cause because "the CI stated they saw 'duffle bags in a shed on the property consistent with those having been used by Stinson to carry antique coins and jewelry in a shed on the property' with once again no corroborating evidence." Brief for appellant at 10. But there is no case law to support the contention that the entire tip must be corroborated. See *State v. Hidalgo, supra*. And deputies were able to corroborate other statements about Barker trying to sell some of the stolen coins at a gold and bouillon store. The CI also reported Stinson sold some of the stolen items at pawn shops, which led to deputies tracking down some of the stolen items, like the "starburst" class ring. Furthermore, deputies corroborated that Barker and Stinson would trade stolen coins for shelter, because the CI turned over stolen coins that were given to them when Barker and Stinson stayed at the CI's residence. Although some of the CI's statements were not corroborated, deputies were able to corroborate other statements the CI made; thus, Isaacson's argument fails.

The remainder of Isaacson's argument centers on an assertion that the CI was unreliable; thus, there is not enough information in the affidavit to support a finding of probable cause. We have already determined that the CI's statements were credible and by making a statement against their penal interest, the statements provided a sufficient indicia of reliability to support a finding of probable cause. Since the CI's statements were enough to establish probable cause, this argument also fails.

*Search Warrant Did Not Contain Material Omissions.*

Isaacson's third argument claims the affidavit failed to advise the court that the photos of the stolen items that the CI had were all taken at the CI's residence. Isaacson asserts that if this information had not been omitted, it would have weakened or damaged the inference that these items were in Isaacson's residence.

In *Franks v. Delaware*, 438 U.S. 154, 155, 98 S. Ct. 2674, 2674, 57 L. Ed. 2d 667 (1978), the U.S. Supreme Court held that a search warrant may be invalidated if a defendant proves that the affiant officer "knowingly and intentionally, or with reckless disregard for the truth," included in their affidavit false or misleading statements which were necessary to establish probable cause. *State v. Schuller*, 287 Neb. 500, 507, 843 N.W.2d 626, 632 (2014). The defendant must make a substantial preliminary showing that the false statement was made knowingly and intelligently or with reckless disregard for the truth, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. *Franks v. Delaware, supra*.

Courts have extended the *Franks*' rationale to omissions in warrant affidavits of material information. *State v. Schuller, supra*. If the defendant shows that the officer knowingly or intentionally, or with reckless disregard for the truth, omitted information material to a probable cause finding, the reviewing court will reexamine the affidavit (with the omitted information) and determine whether it still establishes probable cause. *Id*. If it then does not establish probable cause,

then *Franks v. Delaware, supra*, requires the search warrant be voided and the fruits of the search excluded. *State v. Schuller, supra*.

Here, Isaacson's argument does not claim or make a preliminary showing that Heitman omitted information about where the photographs were taken either knowingly and intelligently or with reckless disregard for the truth. The totality of her argument follows,

> The affidavit in support of search warrant stated that the CI had pictures of certain items that were obtained in prior burglaries, but failed to state that the pictures were all taken in the CI's residence, which Officer Heitman testified to. . . .

> This was a material omission, which had it not been omitted would have weakened or damaged the inference that these items were in [Isaacson's] residence, which could be logically drawn from the CI's statement in the affidavit for search warrant.

Brief for appellant at 12. This is the same argument Isaacson raised at the motion to suppress hearing, and the district court found her argument was insufficiently pled and lacked a showing of any intentionally false or misleading statements. On appeal, Isaacson does not claim that Heitman knowingly or intelligently or with reckless disregard for the truth omitted the information about where the photographs were taken. Without such a claim or preliminary showing, she has not met the requirements for review under *Franks v. Delaware, supra*. Therefore, this argument fails.

## CONCLUSION

Evaluating the totality of the circumstances presented in the affidavit, we find no error in the issuance of the search warrant; therefore, we reject Isaacson's arguments to the contrary.

AFFIRMED.